CLARK *v.* SHELDON.

1. MORTGAGES — ACCOUNTING — DOUBTFUL QUESTIONS RESOLVED
AGAINST HOLDER OF MORTGAGE GUILTY OF CARELESSNESS IN KEEP-
ING ACCOUNTS.
   In a suit by the purchasers of mortgaged premises for an
   accounting as to the amount due, where defendant, who
   is now the owner of the mortgage, as agent of the mort-
   gagee was exceedingly careless in looking after his prin-
   cipal's interest for many years, so that the memory of
   witnesses is unreliable, doubtful questions will be resolved
   in favor of the plaintiffs.

2. SAME — MORTGAGED PROPERTY NOT RELEASED BY NEW MORTGAGE
ON PART.
   Where two brothers to whom mortgaged property was
   devised agreed to execute new mortgages on their re-
   spective shares of the property, but one of them failed to
   do so, the mortgage executed by the other pursuant to
   said agreement was not an independent security and in
   no way released the property from the original mortgage.

3. SAME — ACCOUNTING — INDORSEMENTS OF AMOUNTS PAID.
   An amount paid for the release of part of the mortgaged
   premises sold by the mortgagor, which plaintiffs claim
   should be credited on the mortgage, *held*, included in a
   larger amount indorsed thereon about the time the deed
   was given.

4. APPEAL AND ERROR — COMPUTATION ASSUMED TO BE CORRECT
WHERE NO INACCURACIES POINTED OUT.
   Where, on appeal from the decree in a suit for an ac-
   counting, appellant's counsel point out no inaccuracies in
   the trial court's computation, it may be assumed that the
   amount found due is correctly stated.

5. ESTOPPEL — STATEMENTS BY MORTGAGEE — EVIDENCE — SUFFICIENCY.
   Plaintiffs' claim that they purchased mortgaged property
   in reliance upon statements of the assignee of the mort-
   gage as to the amount due thereon, and that he is there-
   fore estopped from now claiming a larger amount, *held*,
   not supported by the record.

6. LIMITATION OF ACTIONS—PAYMENTS—EVIDENCE.

    Where two brothers to whom mortgaged property was
    devised agreed to execute new mortgages on their re-
    spective shares of the property, but one of them failed
    to do so, the mortgage executed by the other pursuant
    to said agreement was not an independent security, and in
    no way released the property from the original mortgage,
    and, therefore, indorsements of payments on said second
    mortgage were evidence of payments on the original mort-
    gage staying the running of the statute of limitations.

Appeal from Barry; Smith (Clement), J. Sub-
mitted April 6, 1923. (Docket No. 44.) Decided
June 4, 1923. Rehearing denied October 1, 1923.

Bill by Frank Clark and another against Philo A.
Sheldon and Louis Norton, administrator of the estate
of John Holden, deceased, for the discharge of certain
mortgages, and for an accounting. Defendant
Sheldon filed a cross-bill for the foreclosure of said
mortgages. From a decree for defendants, plaintiffs
appeal. Affirmed.

*Charles W. Nichols* and *Howard A. Ellis,* for plain-
tiffs.

*Arthur E. Kidder* (*William W. Potter,* of counsel),
for defendant Sheldon.

SHARPE, J. On February 27, 1894, Jeremiah M.
Rogers and wife executed and delivered to John
Holden, through his agent, the defendant Philo A.
Sheldon, a mortgage on 312 acres of land on sections
17 and 20 in the township of Carlton in Barry county
for $6,454, due in 7 years and bearing interest at the
rate of 7 per cent. per annum. On May 2, 1898,
Rogers deeded 20 acres of this land to Tobias Garnes.
Holden released this part of the mortgaged premises

by instrument dated April 15, 1898, recorded on May 3, 1898, for an expressed consideration of $750. Mr. Rogers died on February 15, 1899. In his will he devised 160 acres of this land to his son Clarence and the balance, 132 acres, consisting of a 72-acre and a 60-acre parcel to his son Claude, subject to the incumbrance thereon. There is some dispute about the amount then due on the mortgage, but both Clarence and Claude testified that it was upwards of $6,100. This is further evidenced by a petition filed by Clarence as administrator with the will annexed for leave to mortgage to take up the Holden mortgage, in which the amount due was stated to be about $6,000. The brothers agreed upon a division of this indebtedness and were each to execute new mortgages on their respective shares of the property therefor. On February 27, 1900, Claude executed a mortgage to Mr. Holden for $2,670, due in 5 years and bearing 6 per cent. interest. This was not recorded until December 18, 1919. Clarence at first testified that he had also executed a mortgage, but later said his memory was not clear about it and that he might have "assumed the balance of the old mortgage after deducting the amount of the new mortgage given by Claude." It is apparent that this latter statement was in fact the truth. On September 5, 1900, Claude deeded his land to William Courtright, subject to the $2,670 mortgage, he receiving, in addition thereto, resort property of the value of about $2,000. On December 7, 1903, Courtright quitclaimed to Frank W. Clark, hereafter referred to as the plaintiff, receiving about $200 for his equity in the 132 acres. On March 31, 1904, Clarence deeded that part of the farm devised to him to plaintiffs, receiving property valued at $1,950 for his interest therein. This deed, prepared by plaintiff and sent to Clarence for execu-

tion, was made subject to "one mortgage now on record * * * to the amount of $3,435," less any deduction found to be due thereon which was to be paid to Clarence. There was no such mortgage on this land. If the payments made after the father's death be allowed and the interest be computed for such time, the amount stated and the amount of the mortgage given by Claude further tend to support the claim that there was about $6,000 due on the original mortgage at the time of the father's death. The consideration expressed in this deed was $5,385. On April 4, 1904, plaintiffs deeded 72 acres, a part of that acquired from Courtright, to Barbary Allerding for a stated consideration of $2,500. They received in payment a horse, valued at $150, and the balance of $2,350 was to be paid on the mortgage given by Claude. It is conceded that this payment was made by Mrs. Allerding. It was indorsed on the mortgage under date of April 24, 1905. On August 18, 1904, Mr. Holden executed a release of the 72 acres from the original mortgage given by Jeremiah M. Rogers in consideration of $2,326.46 then paid.

John Holden died in 1919 and the defendant Norton was appointed administrator of his estate. The mortgages referred to had always been in the custody of the defendant Sheldon and all payments had been made to him. Plaintiffs paid Norton $1,000 on December 22, 1919. A tender was afterwards made of $375 and a discharge demanded and refused, whereupon plaintiffs filed this bill for an accounting as to the amount due and for a discharge of the mortgages from the record.

Difficulty arose between Sheldon and Norton in settling the accounts of the former with the estate. It was finally compromised by certain payments made

by Sheldon and the mortgages in question were assigned to him. It is now conceded that the estate has no interest in the suit. The question presented is, What amount is due to Sheldon on these mortgages? The trial court found $7,068.70 to be due on the Jeremiah M. Rogers mortgage and $1,035.53 on the Claude Rogers mortgage, and granted Sheldon a foreclosure decree therefor as prayed for in his cross-bill. Plaintiffs appeal.

It is usually very difficult to arrive at a satisfactory accounting of transactions running back so many years when the memory of witnesses is not always to be relied upon. We cannot but feel that Mr. Sheldon was exceedingly careless in looking after Mr. Holden's interest in these mortgages and, as he is now the holder of them and the plaintiffs purchasers of the premises subsequent to the giving of the mortgages, we feel it our duty to resolve doubtful questions in their favor. The indorsements which appear on the Jeremiah M. Rogers mortgage are as follows:

| | | |
|---|---|---|
| "1—March 13, 1895 | ........................... | $200.00 |
| "2—March 26, 1898 | ........................ | 153.00 |
| "3—May 3, 1898 | ........................... | 822.73 |
| "4—May 25, 1899 | ......................... | 2,300.00 |
| "5—March 3, 1900 | ......................... | 159.50 |
| "6—March 3, 1901 | ......................... | 200.00 |
| "7—January 7, 1904 | ....................... | 50.00 |
| "8—December 23, 1915 | .................... | 50.00" |

Those made on the Claude Rogers mortgage are as follows:

| | | |
|---|---|---|
| "1—March 3, 1900 | ......................... | $159.50 |
| "2—March 3, 1901 | ......................... | 200.00 |
| "3—April 24, 1905 | ........................ | 2,350.00 |
| "4—January 7, 1904 | ....................... | 50.00 |
| "5—December 23, 1915 | .................... | 50.00 |
| "6—December 22, 1919 | .................... | 1,000.00" |

It will be observed that several of the items are

indorsed on both mortgages. It is apparent that but one credit was intended. This can, but be accounted for by the fact that Clarence failed to execute the mortgage for his share of the mortgage indebtedness. The mortgage given by Claude was therefore not an independent security and in no way released the property devised to him from the original mortgage. It was not recorded until after Mr. Holden's death. Pending the execution of a mortgage by Clarence, we can well understand why Mr. Sheldon would make these indorsements on both mortgages; on Claude's to show that the payment was made by him, and on the other to show that the indebtedness secured thereby was reduced in that amount.

There is no positive proof that any other payments were made than those indorsed. Plaintiffs, however, claim that the $750 expressed as the consideration for the release of the 20 acres sold by Rogers to Garnes, executed on April 15, 1898, should be credited on the mortgage. The defendant insists that this payment is represented by the item of $822.73 indorsed as paid on May 3, 1898. Fortunately, we are not without quite convincing proof of the transaction. Garnes purchased 40 acres from Rogers, for which he paid $1,400; 20 acres was included in the Rogers' mortgage and 20 acres in a mortgage given to one Foster for $550, on which there was then due $577.27. Mr. Sheldon was also acting as the agent of Foster. The Foster mortgage was paid and discharged on the margin of the record on the same day the Holden release was recorded. The date of the release is significant. It was executed April 15th, whereas the deed was not given until May 2d. While the deal was in progress, Sheldon secured the release from Holden. It was doubtless then expected that but $750 would be paid on the mortgage, but, when the

deal was completed, the entire consideration, $1,400, less the $577.27 due on the Foster mortgage, was retained by Sheldon and credited on the Holden mortgage.

Plaintiffs also claim that a credit should be given for $2,326.46, stated as a consideration for the release from the mortgage of the land sold by plaintiffs to Mrs. Allerding; that it is not represented by the $2,350 indorsed as paid on April 25, 1905. We are not so impressed. The release was executed on August 18, 1904. The difference in the dates is perhaps accounted for by the fact that Mrs. Allerding did not make the payment to Sheldon in cash. It appears that in 1905 she gave a mortgage to secure the payment of $1,250 of this money. The discrepancy in the amounts, while not fully explained, is, we think, immaterial. Plaintiffs were the owners of the entire farm after they got the deed from Clarence in March, 1904. They make no claim that they thereafter made a payment of $2,500, or any like amount, on either of these mortgages. There is no proof that such a payment was made by any other person. The testimony of Henry Sheldon, who kept the books for his father, is very convincing that but one payment was made. The credit having been given for the entire $2,500, we think this item deserves no further consideration. If we eliminate these two items, for which plaintiffs claim they should receive credit, a simple matter of computation is left. Plaintiffs' counsel do not point out any inaccuracies in that adopted by the trial court, so we assume that the amount found to be due is correctly stated. The length of the interest-bearing period accounts for the large amount.

Counsel strongly urge that plaintiff, at the time he purchased, relied upon the statements made by Mr.

Sheldon as to the mortgage indebtedness and that he is now estopped from claiming a larger amount. It may be said in passing that many of the statements to which counsel call attention were made after the death of Mr. Holden and at a time when the administrator, Mr. Norton, was seeking to obtain a settlement with Sheldon of his financial dealings with Mr. Holden. These are only material as bearing upon the probability of the others being made. As to the earlier statements, Mr. Clark testified:

"I had talked with Mr. Sheldon about it and had talked with him in regard to what the mortgage was on the farm and Mr. Sheldon told me what it was and he corroborated what Mrs. Rogers said, they told me that Claude and Clarence was to pay this mortgage in the will and that they had taken up the old seven per cent. mortgage and given a six per cent. mortgage for the balance due on the farm. I communicated that to Mr. Sheldon and he said that was true, that they had taken up the seven per cent. mortgage and given a six per cent. mortgage for the balance. * * * He said there was only the one mortgage on the farm, and I asked him because he had an abstract office and I supposed loaned money and I never knew Mr. Holden owned the mortgage. He told me approximately the amount of it. I cannot remember the exact figures, but it was under the amount going to Clarence and that is why I drew in the deed what there was over thirty-four hundred forty-five dollars should go to Clarence Rogers at St. Ignace and I got my information about the mortgage and the amount from Mr. Sheldon. I understood that that mortgage covered the one hundred sixty and the sixty and the seventy-two acres. I did not know who executed the mortgage."

Mr. Sheldon, as a witness, denied having made such statements. Were there no other facts or circumstances of a corroborative nature, we should be in-

clined to find that the statements were made as claimed by plaintiffs. The history of the entire transaction tends to discredit the claim made. It must be remembered that this conversation is said to have taken place in 1903, about three years after the death of Jeremiah Rogers. The amount then due on his mortgage was computed, and no person could have made the computation except Mr. Sheldon. The amount due was stated in the petition to the probate court for leave to remortgage. When Claude's mortgage was given in 1900, both he and Clarence testified that the amount due was about $6,100. But $359.50 had been afterwards paid before the time of the alleged conversation in 1903. The matter must have been fresh in the mind of Mr. Sheldon at that time. He could have had no purpose in misrepresenting the facts. It is simply inconceivable that any such conversation was had. The confusion in the mind of Mr. Sheldon in 1919, sixteen years thereafter, largely arose from the fact that Clarence had not executed a mortgage as he had agreed to do. Sheldon's attention was then called to the differences between the amounts stated in the releases and the amounts credited and he jumped to the conclusion that the Claude mortgage must have been given to secure the amount unpaid. However that may be, it cannot be said that plaintiffs' purchase was made in reliance upon such statements. The value of the property purchased by plaintiffs also tends to discredit his recollection of the transaction. Clarence testified his farm was well worth the $5,385 he sold it for. Claude testified the land he sold to Courtright was worth about $3,000. Plaintiff admits that he sold a part of this to Mrs. Allerding for $2,500 and was offered $1,200 for the balance. He thus secured property worth more than $8,000 on his purchase.

For this he paid, as he now claims, $200 to Courtright for his equity, $1,950 to Clarence, and assumed but the one mortgage, that given by Claude, and on which he claims there was represented to him to be then due about $3,400.    While he was entitled to the benefit of a good bargain if he made one, we cannot believe he was so fortunate as his testimony would indicate.

It is insisted that the claim under the original mortgage is barred by the statute of limitations. Plaintiffs insist that the payment of $50, made by them on December 23, 1915, indorsed on both mortgages, was intended to apply on the Claude Rogers mortgage and that the last payment made on the Jeremiah M. Rogers mortgage was therefore made on January 7, 1904, more than 15 years before the filing of the cross-bill.    The view we have expressed as to the effect of the giving of the mortgage by Claude is an answer to this claim.    It was not accepted as a payment on the original mortgage.    It was not recorded.    It was executed conditional on Clarence also executing a mortgage on his land for the balance then due.    It had simply the effect of a double mortgage to secure the same indebtedness. Any payments made on it were payments on the original indebtedness and indorsements made on it were in law and in fact evidences of payment made on the original mortgage.    It being undisputed that payments were made in 1901, 1905 and 1919, the statute was no bar to the relief prayed for in the cross-bill and granted in the decree.

The decree rendered may do an injustice to Mr. Clark, but we are persuaded that it was justified by the preponderance of the proofs.    This litigation well illustrates the necessity of those purchasing real estate

securing an abstract of the title and having it examined by some person competent to pass upon it.

The decree is affirmed, with costs to the defendant Sheldon.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.